**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **SUE COLBY,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**CVS HEALTH CORPORATION and CVS PHARMACY, INC**<br><br>Defendants. | Case No. ______________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sue Colby ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Defendants, CVS HEALTH CORPORATION and CVS PHARMACY, INC. ("CVS" or "Defendants") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## NATURE OF THE ACTION

1. This class action challenges Defendants' false and misleading marketing of its Well Market "Sugar Free" Drink Mix Replenish products (hereinafter "the Products"). Well Market is CVS's exclusive store brand, distributed across the United States. The Products are sold at CVS stores and online at www.cvs.com. [1]

2. Plaintiff and Class Members, who purchased the Product, bring this Action because of materially false and misleading representations: Defendants label the Product "ZERO SUGAR," advertises it on CVS.com as "Sugar Free," and represents on its Supplement Facts

[1] See https://www.cvs.com/shop/well-market-sugar-free-watermelon-replenish-drink-6-ct-prodid-632756 (Last Accessed on September 25, 2026)

panel that the Product contains “0g” of total sugars (collectively, the “Representations”). A screenshot of However, the Product does in fact contain sugar, in the form of allulose, a monosaccharide.

3. Defendants made their Representations about “zero” sugar in its Products in order to induce health-conscious consumers, like Plaintiff, to purchase the Products. But these representations are categorically misleading and false.

4. For as long as consumable goods have been sold, “healthwashing,” which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of healthwashing. Here, Defendants use false advertising and deceptive conduct that promise health-related benefits. To compound matters, the misrepresentations made on the Product are not only potentially harmful but also command a price premium consistent with those misrepresentations that Plaintiff and Class members would not have paid had they known that Defendants’ Representations were false and misleading. Defendants also intentionally provide no warning on the Product concerning potential risks or the tendency to cause health risks.

5. Against this backdrop, Plaintiff, individually and on behalf of members of the Class and Subclass and all others similarly situated, brings this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys’ fees under state statutes and common-law doctrines due to Defendants’ intentional failure to ensure that the Product was distributed, produced, and sold in a manner consistent with its advertising. As a result of the foregoing, Plaintiff and class members (defined below) were harmed by paying a price premium for the Products, which they otherwise would not have paid due to the

misrepresentations made about packaging and advertising, or would not have purchased the Products at all.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendants, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

7. This Court has general personal jurisdiction over Defendants because Defendants maintain their headquarters and principal place of business in Woonsocket, Rhode Island, within this District. Defendants are therefore at home in Rhode Island, and this Court's exercise of personal jurisdiction over Defendant is consistent with due process.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District. Defendants maintain their principal place of business in Woonsocket, Rhode Island, and is subject to personal jurisdiction in this District with respect to this action, making it a resident of this District for venue purposes under 28 U.S.C. § 1391(c)(2).

## PARTIES

***Plaintiff Sue Colby***

9. Plaintiff, Sue Colby, is an individual consumer who, at all times material hereto, is and was a resident and citizen of Clovis, California.

10. Plaintiff purchased the CVS Well Market Drink Mix Replenish Product, in Watermelon flavor, prominently labeled "ZERO SUGAR," in June 2025 at a CVS store located in Fresno, California.

11. Plaintiff reviewed and relied upon the Product's "ZERO SUGAR" Representation when purchasing. She paid a price premium and would not have purchased the Product but for the "ZERO SUGAR" claim.

***Defendants-CVS Health Corporation and CVS Pharmacy, Inc.***

12. CVS Health Corporation is a Delaware Corporation with Headquarters at One CVS Drive, Woonsocket, Rhode Island, 02895.

13. CVS Pharmacy, Inc. is a Rhode Island Corporation with Headquarters at One CVS Drive, Woonsocket, Rhode Island, 02895.

14. Upon information and belief, Defendants, directly or through their subsidiaries, market, distribute, and sell the Well Market Drink Mix Replenish Watermelon product (the "Product") at CVS retail stores, including stores in California.

15. Well Market is a CVS store brand encompassing snacks, beverages, and grocery products. Upon information and belief, Defendants, directly or through their subsidiaries, participate in the labeling, advertising, and marketing of the Product, including the representations challenged in this action.

16. Plaintiff reserves the right to seek leave to amend this Complaint to name additional responsible parties or entities as warranted by information obtained through discovery.

## COMMON FACTUAL ALLEGATIONS

### Consumers Seek Out and Pay More for Products That Contain No Sugars

17. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount

of added sugar" is "[a]s little as possible."[2] Sugar-sweetened beverages are by far the top source of added sugars for Americans.[3]

18. For decades, federal health authorities have recommended limiting added sugar intake.[4] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[5]

19. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

20. Defendants have capitalized on that demand. It markets Products whose predominant ingredient is allulose, a sugar, while labeling and advertising them as "Sugar Free." Defendants thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**<u>Defendants' False and Misleading Representations</u>**

---

[2] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[3] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

[4] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[5] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

21. Defendants market, distribute, and sell the Product under the Well Market brand at CVS stores, including stores in California. The Product's labeling represents that it contains "Zero Sugar."

22. Below are illustrative samples of the Products and Representations:




23. Defendants' official website markets the Product as "Sugar Free" and describes it as having a "Zero Sugar formula[6]. However, the ingredient information published on that website identifies Allulose as the first-listed ingredient under "Inactive Ingredients"[7].

---

[6] See https://www.cvs.com/shop/well-market-sugar-free-watermelon-replenish-drink-6-ct-prodid-632756 (Last accessed on September 25, 2026)

[7] See https://www.cvs.com/shop/ingredients/well-market-sugar-free-watermelon-replenish-drink-6-ct-prodid-632756 (Last accessed on September 25, 2026)


Well Market Sugar Free Watermelon Replenish Drink, 6 ct
4.2 (53 reviews)
Share
$8.69
$1.45/ea.
Prices may vary from online to in store
How to get it
Pickup
Within 1 hour
Same-Day Delivery
Enter address
Shipping
Order for Wednesday delivery
Available at 11 MAIN ST.
Check more stores
2 in stock | Aisle 27
Quantity 1
Add for pickup
ZERO SUGAR
6 PACK
Well Market
DRINK MIX
replenish
WATERMELON
NATURAL WATERMELON FLAVOR WITH OTHER NATURAL FLAVORS
DIETARY SUPPLEMENT
WITH ELECTROLYTES FOR HYDRATION SUPPORT†
EXCELLENT SOURCE OF 5 ESSENTIAL VITAMINS
vitamins C, B3, B5, B6, B12
6—0.42 OZ (12 g) PACKETS, NET WT 2.54 OZ (72 g)
Sponsored
New
AirHeads Xtremes Rainbow Berry Bites
AirHeads
0.0 (0)
$1.99
52.4¢/oz.
Add


Well Market
Ingredients for Well Market Sugar Free Watermelon Replenish Drink, 6 ct
4.0 (53)
$8.69
Prices may vary from online to in store
How to get it
Pickup
Get it today after 1 hour
In Stock at 11 MAIN ST.
WAKEFIELD RI 02879
Check more stores
Shipping
Order for Wednesday delivery
Quantity 1
Add for Pickup
Ingredients
Active Ingredients: VITAMIN C, NIACIN, VITAMIN B6, VITAMIN B12, PANTOTHENIC ACID
Inactive Ingredients: ALLULOSE, CITRIC ACID, POTASSIUM CITRATE, SALT, SODIUM CITRATE, NATURAL FLAVORS, SILICON DIOXIDE, STEVIA LEAF EXTRACT, ASCORBIC ACID (VITAMIN C), NIACINAMIDE (VITAMIN B3), D-CALCIUM PANTOTHENATE (VITAMIN B5), PYRIDOXINE HYDROCHLORIDE (VITAMIN B6), CYANOCOBALAMIN (VITAMIN B12).
See product details for Well Market Sugar Free Watermelon Replenish Drink, 6 ct ›

24. The Representations appear in Defendants' online marketing of the Product. On CVS.com, Defendants advertise the Product as "Sugar Free" and lists "Zero sugar formula" among its key product features.

25. The Representations communicate to reasonable consumers that the Product contains no sugar. Plaintiff alleges that consumers reasonably understand the terms "Sugar Free" and "Zero Sugar," as used in Defendants' marketing of the Product, to mean that the Product contains no sugar.

26. "Sugar Free" and "Zero Sugar" are objective, quantitative representations concerning the Product's sugar content. Under 21 C.F.R. § 101.60(c)(1), use of these terms is subject to a threshold of less than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. Plaintiff alleges that Defendants' unqualified Representations communicate that the Product contains no sugar, notwithstanding its inclusion of allulose.

**<u>Allulose Is a Sugar</u>**

27. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[8] No such rulemaking ever occurred. Accordingly, under the governing federal regulations, allulose is a sugar.

[8] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

28. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[9] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[10] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[11]

29. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[12] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[13]

30. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

---

[9] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[10] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[11] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[12] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[13] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

31. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendants' separate "Sugar Free" and "Zero Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

32. The "Sugar-Free," and "Zero Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendants' advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

33. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

34. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "zero sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by

> consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

35. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

36. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

37. Defendants' ingredient information for the Watermelon Product identify allulose as the first-listed ingredient under "Inactive Ingredients." Nevertheless, Defendants label the Product "ZERO SUGAR" and advertise it on CVS.com as "Sugar Free." Plaintiff alleges that these Representations mislead reasonable consumers regarding the Product's sugar content.

38. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

39. Plaintiff does not seek to enforce the FDCA directly. Rather, Plaintiff seeks relief under independently enforceable state consumer-protection laws, including California state law provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards California has adopted and the conduct that renders the Products misbranded under California law.

**Defendants' Conduct Violates California's Food Labeling Laws**

40. The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §§ 109875 et seq., prohibits the misbranding of food sold in California. Under Cal. Health & Safety Code § 110660, "[a]ny food is misbranded if its labeling is false or misleading in any particular."

41. In determining whether labeling or advertising is misleading, California law requires consideration of the representations made or suggested, as well as the extent to which the labeling or advertising fails to reveal facts concerning the food or the consequences of its customary use. Cal. Health & Safety Code § 110290.

42. The Sherman Law also incorporates federal food-labeling regulations into California law. See Cal. Health & Safety Code § 110100(a). Federal regulations define "Total sugars" to include all free mono- and disaccharides. 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide; however, FDA guidance provides for enforcement discretion regarding its exclusion from the amounts of "Total Sugars" and "Added Sugars" declared on Nutrition Facts labels.

43. Federal regulations further provide that the terms "sugar free," "zero sugar," "no sugar," or other terms having the same meaning may be used only if the food contains less than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. 21 C.F.R. § 101.60(c)(1).

44. Plaintiff alleges that the Product's labeling misrepresents the nature and sugar content of the Product and fails to disclose material facts necessary to prevent Defendants' "Sugar Free" and "Zero Sugar" Representations from misleading consumers. See Cal. Health & Safety Code §§ 110290, 110660.

45. Accordingly, Plaintiff alleges that the Product is misbranded under California law because the Representations misleadingly convey that the Product contains no sugar despite its inclusion of allulose. Defendants' sale, delivery, and offer for sale of the allegedly misbranded Product in California therefore violate the Sherman Law. See Cal. Health & Safety Code §§ 110660, 110760.

**Reasonable Consumers Would Be Misled By Defendants' Deception.**

46. Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation on the front of the package that the Products are "Sugar Free." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

47. Defendants' alleged deception is reinforced because a consumer who reviews the Supplement Facts panel would encounter a "0g Total Sugars" declaration, even though the Product contains allulose.

48. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendants are responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendants Knew the Representations Were False**

49. Defendants knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when its marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendants knew that: (a) the Products contain allulose; (b) allulose is a sugar; (c) its labels represented that the Products contained no sugar; (d) reasonable consumers

would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendants to charge a premium for Products containing sugar.

50. Defendants, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite knowing consumers reasonably rely on the Representations, Defendants chose to continue using them, causing consumers to buy or overpay for the Products.

**Defendants' Sugar Free Claims Injured Plaintiff and the Class**

51. Defendants concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that the predominant ingredient is a sugar; (c) the fact that the Products are not sugar free; and (d) the fact that the Products are misbranded under federal law when sold bearing the Representations.

52. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendants warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendants created; (f) purchased Products that Plaintiff and members of the Classes did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff and members of the California Subclass, purchased misbranded Products that could not lawfully have been sold in California.

53. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendants' wrongful conduct.

## CLASS ALLEGATIONS

54. Plaintiff brings this action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the proposed classes are defined below (collectively, the "Classes")

> **Nationwide Class:**
>
> All persons in the United States who, during the maximum period of time permitted by law, purchased Defendants' Products for their personal use.
>
> **California Subclass:**
>
> All persons in California who, during the maximum period of time permitted by law, purchased Defendants' Products for their personal use ("California Class").

55. Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

56. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

57. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

58. **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

59. **Commonality:** Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products were "Sugar Free";

c. Whether reasonable consumers would understand Defendants' representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendants' representations and warranties were material;

e. Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

f. Whether Defendants were unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendants' actions and the amount of those damages;

h. Whether Plaintiff and the members of the Classes are entitled to statutory

damages; and

i. Whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

60. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law, as alleged herein.

61. **Adequacy of Representation:** Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

62. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

63. **Superiority of Class Action:** Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

64. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

65. This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

66. Defendants' policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendants' conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

67. Unless a Class-wide injunction is issued, Defendants may continue to act unlawfully as set forth in this Complaint.

68. Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

69. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

70. Plaintiff brings this count on behalf of herself and the California Class.

71. This claim is brought under the law of the State of California.

72. This claim is brought in the alternative to the other Counts. California law and the Federal Rules of Civil Procedure allow Plaintiff to plead alternative theories.

73. Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts, including by making the labeling Representation alleged herein.

74. As a direct result of Defendants' deceptive conduct, it obtained unjust and inequitable benefits at the expense of Plaintiff and the Class members. Defendants' conduct violated fundamental principles of justice, equity, and good conscience. Accordingly, it would be inequitable for Defendants to retain the revenues derived from sales induced by its misleading Representations.

75. Plaintiff and the Class members conferred substantial financial benefits upon Defendants, through retail purchases of the Products, which materially differed from the representations made by Defendants.

76. Plaintiff and the Class members seek the imposition of a constructive trust over the profits improperly obtained by Defendants, from which Plaintiff and the Class may obtain restitution and disgorgement.

**COUNT II**
**VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code § 1750 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

77. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendants.

79. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

80. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

81. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

82. Defendants profited from sales of the falsely and deceptively advertised Products by representing that the Products are "Sugar Free" even though they contain allulose as the first ingredient.

83. Defendants' wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

84. Plaintiff and the California Subclass Members currently seek injunctive relief under the CLRA and reserve the right to amend the Complaint to seek any additional relief authorized after expiration of the statutory notice period. Cal. Civ. Code §§ 1780, 1782(d).

**COUNT III**

**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, Et Seq. ("UCL")**
**(On behalf of Plaintiff and the California Class)**

85. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86. Plaintiff brings this cause of action on behalf of herself and the California Class Members against Defendants.

87. Plaintiff is a California resident who purchased the Product at a CVS store in Fresno, California, for personal, family, or household use.

88. At all relevant times, Defendants marketed, distributed, and sold the Product to consumers in California, including Plaintiff in the California Class Members.

89. The UCL prohibits unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising. Cal. Bus & Prof. Code § 17200.

90. Defendants engaged in unfair and fraudulent business acts and practices by marketing the Product through the "Sugar Free" and "Zero Sugar" Representations described herein. Plaintiff alleges that these Representations are likely to deceive reasonable consumers into believing that the Product contains no sugar, although it contains allulose.

91. The Representations concern a material characteristic of the Product (its sugar content) and are likely to influence reasonable consumers' purchasing decisions.

92. Before purchasing the Product, Plaintiff saw and relied upon the Representations identified in the preceding allegations. Plaintiff understood those Representations to mean that the Product contained no sugar, and that understanding was a substantial factor in her decision to purchase the Product.

93. Defendants' conduct is fraudulent within the meaning of the UCL because the Representations, considered in context, are likely to mislead reasonable consumers about the Product's composition.

94. Defendants' conduct is also unfair because it causes consumers to spend money based on a materially misleading description of the Product. Plaintiff alleges that this economic injury is substantial, is not outweighed by countervailing benefits to consumers or competition, and could not reasonably have been avoided by consumers relying on the Representations.

95. As a result of Defendants' conduct, Plaintiff and the California Class Members purchased a Product that was worth less than it would have been worth as represented. Had Plaintiff known the facts alleged herein, she would not have purchased the Product or would have paid less for it.

96. Plaintiff therefore suffered injury in fact and lost money as a result of Defendants' alleged unfair competition, satisfying California Business and Professions Code § 17204.

97. Through the conduct alleged herein, Defendants obtained money from Plaintiff and the California Class Members that it would not otherwise have obtained.

98. Pursuant to California Business and Professions Code § 17203, Plaintiff seeks restitution of money Defendants acquired from Plaintiff and the California Class Members through the alleged unfair competition, including the portion of the purchase price attributable to the misleading Representations, in an amount to be established through proof.

99. Plaintiff also seeks costs and reasonable attorneys' fees to the extent recoverable under California Code of Civil Procedure § 1021.5 or other applicable law.

**COUNT IV**
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

100. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

101. Plaintiff brings this Count on behalf of herself and the California Class.

102. Defendants' acts and practices, as described herein, have deceived or are likely to deceive members of the California Subclass and the public. Defendants represent that the Products are "Sugar Free" even though they contain allulose, a sugar, as the first ingredient.

103. Defendants have disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

104. Defendants' above-described advertising is likely to deceive because Defendant affirmatively represents that the Products are "Sugar Free," "Zero Sugar," and "0 Sugar."

105. In making and disseminating these statements, Defendants knew, or should have known, that their advertising was untrue or misleading. Plaintiff and the California Subclass based their purchasing decisions on Defendants' materially false Representations and were injured in fact and lost money or property as a result.

106. Defendants' misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

107. Plaintiff and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in her favor and against Defendants, as follows:

a. Certifying the California and Multi-State Classes pursuant to Federal Rule 23, and appointing Plaintiff and her counsel to represent the Classes;

b. Declaring that Defendants' conduct constitutes:

i. A violation of California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750 et seq.);

ii. A violation of the California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.);
iii. A violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500);
iv. Violations of substantially similar consumer protection statutes of other states; and
v. Unjust enrichment;

c. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and Class members are entitled;

d. Awarding equitable relief, including restitution and/or disgorgement of Defendants' revenues obtained by means of any wrongful act or practice;

e. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses as permitted by law;

f. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law; and

g. Granting such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: October 1, 2026

Respectfully Submitted,

*/s/ Peter N. Wasylyk*
Peter N. Wasylyk (RI Bar No. 3351)
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Tel.: (401) 831-7730
Fax: (401) 861-6064
Email: pnwlaw@aol.com

*/s/ Kevin Laukaitis**
**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205 #10518
San Juan, PR 00907
Phone: (215) 559-6072
Email: *klaukaitis@laukaitislaw.com*

*Pro hac vice application forthcoming

*Attorneys for Plaintiff*
*and the Putative Classes*